## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MD ZAHIDUZ ZAMAN, *a U.S. Citizen*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |  Civil Action No. 19-3592 (ABJ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## <u>MEMORANDUM OPINION</u>

On November 29, 2019, Md Zahiduz Zaman, an American citizen, filed a complaint seeking to compel defendants – the United States Department of Homeland Security ("DHS"); the United States Citizenship and Immigration Services ("USCIS"); the United States Department of State ("DOS"); the United States "Consulate" in Dhaka, Bangladesh; Secretary of DHS, Alejandro Mayorkas; Director of USCIS, Ur Mendoza Jaddou; Secretary of State Antony J. Blinken; and the United States Ambassador to Bangladesh, Earl Miller[1] – to adjudicate the immigration visas he filed on behalf of his mother, Zahanara Habib, and his father, Md Habibur Rahman.[2]  Compl. [Dkt. # 1] ¶¶ 1–12; Compl., Req. for Relief ¶¶ 1–10.  The complaint includes two causes of action: Count One alleges that the decisions on the visa applications have been unreasonably delayed in

---

[1]     Defendants Alejandro Mayorkas, Ur Mendoza Jaddou, and Antony J. Blinken are substituted automatically as defendants in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2]     Plaintiff initially included claims relating to a visa application for his spouse, Mst Fatema Tuj-Juhura Tonny, Compl. ¶¶ 16–23, whose visa has since been issued.  *See* Decl. of Evangeline Howard ("Howard Decl.") [Dkt. # 14-1] ¶ 5.

contravention of law, and Count Two alleges that the failure to act violates plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution.  Compl. ¶¶ 41–44, 52–59.

Plaintiff asks the Court to issue a writ of mandamus ordering either the issuance of the immigrant visas or ordering defendants to complete all administrative proceedings within sixty days.  Compl., Req. for Relief ¶¶ 5, 7.  He also asks that the Court order defendants to explain the cause and nature of the delay and inform plaintiff of any action he may take to "accelerate processing of the visa application[s]."  Compl., Req. for Relief ¶ 8.[3]  Finally, plaintiff asks the Court to assume jurisdiction of this matter and to adjudicate the immigration visa petitions itself under its declaratory judgment authority.  Compl. ¶ 6.  The prayer for relief also seeks attorneys' fees and other costs.  Compl. ¶ 9.

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants have moved to dismiss plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Defs.' Mot. to Dismiss [Dkt. # 14] ("Mot.") at 1.  For the reasons set forth below and after review of the entire record,[4] the Court will grant defendants' motion to dismiss.

---

3      Plaintiff's Request for Relief also calls for a declaration concerning the legality of a DHS policy known as the "Controlled Application Review and Resolution Program" ("CARRP"). Compl., Req. for Relief ¶¶ 2–4.  While there are allegations in Count One that the policy contributed to the allegedly unlawful delay in processing the visa, Compl. ¶¶ 47–51, there is no specific claim in the complaint addressing the policy and whether or why it should have been subject to notice and comment rulemaking.  *See generally* Compl.  Count One is predicated on the provision in the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, that authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), *see* Compl. ¶ 43, and it does not specify any other provision of the statute that may have been violated.

4      Pl.'s Opp. to Defs.' Mot. [Dkt. # 18] ("Opp."); Defs.' Reply to Pl.'s Opp. [Dkt. # 19] ("Reply").

## BACKGROUND

On November 28, 2016, plaintiff filed I-130 IR-5 visa petitions with USCIS for his parents, Ms. Habib and Mr. Rahman.[5]  Compl. ¶¶ 24, 27, 32, 35; *see also* Howard Decl. ¶¶ 6–7.  He alleged that their applications were forwarded to a consular officer in Bangladesh after USCIS concluded processing the applications on July 18, 2017, Compl. ¶¶ 29, 37, and that his parents' visa interviews were conducted on or about April 19, 2018.  Compl. ¶¶ 31, 39.  But the visa applications have remained pending since then.  Compl. ¶¶ 31, 39; *see also* Mot. at 2.

According to the defendants, as of March 2020, DOS suspended visa services in Bangladesh due to the onset of the COVID-19 pandemic.  *See* Mot. at 2.  Routine visa services remain suspended in Bangladesh, and this has contributed to a backlog of visa applications there. *Id.*

## LEGAL STANDARD

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).

---

5       Plaintiff's complaint appears to contain errors about the facts of his parents' visa applications.  Many of these statements were lifted, almost entirely verbatim, from statements made regarding plaintiff's spousal visa submission.  *Compare* Compl. ¶¶ 17–21 (filing visa petition for spouse), *with* Compl. ¶¶ 25–29 (naming plaintiff's mother but filing visa petition for spouse as applicant), *and* Compl. ¶¶ 33–37 (same with plaintiff's father).

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Food and Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) (citation omitted) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

Court in *Iqbal* outlined two central principles: "First, the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd,

only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft*,

566 U.S. at 678–79, citing *Twombly*, 550 U.S. at 555–56.  A claim is facially plausible if the facts

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556.

## ANALYSIS

Defendants moved to dismiss plaintiff's complaint pursuant to both Rule 12(b)(1) and

12(b)(6).  Mot. at 4.  They argue that the Court does not have jurisdiction to hear plaintiff's claims

against DHS, USCIS, and officials from DHS, USCIS, and DOS because these defendants cannot

grant the relief plaintiff seeks: an adjudication of the applications.  Mot. at 4.  Defendants also

moved to dismiss the complaint under Rule 12(b)(6) on the grounds that plaintiff has failed to state

a claim under the APA, the Mandamus Act, or the Fifth Amendment of the Constitution.

Mot. at 5–13.

The Court finds that it has jurisdiction over the case, but that plaintiff has failed to state a

claim for relief that is plausible on its face.

### I.      Subject Matter Jurisdiction

Plaintiff has filed a claim under the Administrative Procedure Act ("APA"),

5 U.S.C. § 701, and a petition for a writ of mandamus pursuant to the Mandamus Act,

28 U.S.C. § 1361.  Compl. ¶ 13.  The APA entitles "person[s] suffering a legal wrong because of

agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof,"

and instructs that "[a]n action in a court of the United States seeking relief other than money

damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed." 5 U.S.C. § 702. Under ordinary circumstances, if the APA provides a cause of action, courts have subject matter jurisdiction under 28 U.S.C. § 1331, the general federal question statue. *See Am. Rd. & Transp. Builders Ass'n. v. EPA*, 865 F.Supp.2d 72, 80–81 (D.D.C. 2012), *aff'd*, No. 12–5244, 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) (per curiam). The APA requires that agencies, "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If they fail to do so, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). At the same time, however, the APA exempts from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Defendants maintain, though, that aside from the "consulate in the Foreign Jurisdiction," no government officials "can grant the relief [p]laintiff seeks in this matter – namely, an adjudication of the Application," because only consular officials have authority to adjudicate immigration applications. Mot. at 4–5. They point to the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101, *et seq.*, which governs the visa adjudication process and grants "consular officers exclusive authority to review applications for visas." Mot. at 4; *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999), citing 8 U.S.C. §§ 1104(a), 1201(a). Because consular officers have exclusive authority to review visa applications, this Court cannot adjudicate the immigration visa petitions under its declaratory judgment authority as plaintiff has requested. *See* Compl., Req. for Relief ¶ 6.

But the crux of plaintiff's complaint is there has been an unreasonable delay in issuing any final decisions on the visa applications. *See* Compl. ¶¶ 41–55. Plaintiff is not asking this Court to

review a consular decision made in a foreign country.  Because the suit challenges agency inaction, as opposed to a decision taken within the consul's discretion, plaintiff's claims should not be dismissed for lack of jurisdiction.  *See Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 114 (D.D.C. 2020), quoting *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63, 65.

Defendants also argue that DHS and its component, USCIS, have completed their processing relating to plaintiff's applications and thus "any claims against officials from the Department of Homeland Security and USCIS are plainly moot or without merit."  Mot. at 4.  However, DHS and USCIS cannot definitively claim they have "completed their processing relating to the Applications."  Mot. at 4.  Defendants assert that plaintiff's parents' applications "remain[] refused under INA 221(g)."  Howard Decl. ¶¶ 6, 7.  When an IR-5 visa is pending under INA 221(g), the consular officer may, among other actions, submit the petition to USCIS for reconsideration.  *See Immigrant Visa Petitions Returned by the State Department Consular Offices*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/forms/all-forms/immigrant-visa-petitions-returned-by-the-state-department-consular-offices (last updated July 15, 2011).[6]

---

6       Ms. Howard writes that Ms. Habib and Mr. Rahman's applications were "refused" under section 221(g) of the INA.  Howard Decl. ¶¶ 6–7.  This section of the INA provides:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

Because plaintiff's IR-5 visa applications are pending, no final decisions have been rendered – and DHS and USCIS may yet play a role in the process.

For these reasons, the Court finds it has subject matter jurisdiction over this case.

## II.     Unreasonable Delay

Plaintiff argues that defendants have violated the APA by "intentionally delaying a response to the DOS in regard to [p]laintiff's family members' visa application[s]," Compl. ¶ 47, and that their "application[s] ha[ve] been in administrative processing beyond a reasonable time period for completing administrative processing of [their] visa application[s]."  Compl. ¶ 52; *see also* Opp. at 1 (emphasis in original) ("Plaintiff Md Zahiduz Zaman has waited **3 years** for the adjudication of his immigrant visa petitions . . . this delay is simply unreasonable under prevailing federal law.").  Plaintiff contends that "the combined delay and failure to act on [p]laintiff's family members' immigrant visa application[s] is attributable to the failure of [d]efendants to adhere to their legal duty to avoid unreasonable delays under the [Immigration and Nationality Act]." Compl. ¶ 53.

Defendants move to dismiss under Rule 12(b)(6) on the grounds that the complaint does not state a claim for unreasonable delay that would support relief under the APA or mandamus relief, Mot. at 1, and they emphasize that any delay was occasioned by the COVID-19 pandemic. *See* Mot. at 11 ("Unquestionably, [p]laintiff's applications have been delayed further due to measures necessary to prevent the spread of COVID-19 and protect the safety of U.S. officials . . . .");  *see also* Reply at 3.

---

8 U.S.C. § 1201(g).  Applications may remain in administrative processing even after DOS issues section 221(g) refusals, rendering these refusals interim decisions.  *See, e.g.*, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020).

Under the Mandamus Act, 28 U.S.C. § 1361, a court can issue a writ of mandamus only if plaintiff demonstrates: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). A writ of mandamus is only issued "where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it." *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (internal citations and quotations omitted). When a plaintiff seeks mandamus relief, the court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000); *see also In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("*Core Commc'ns*") (internal quotations omitted) ("The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus.").

The APA requires that agencies, "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If they fail to do so, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

"The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act." *Bhagerian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020), quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (internal quotation marks omitted). The court must look to whether "the agency has unreasonably delayed the contemplated action," *Core Commc'ns*, 531 F.3d at 855 (internal quotation marks omitted), but "[t]here is no *per se* rule as to how long is too long to wait." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quotation marks and citation omitted).

9

In this Circuit, a claim for unreasonable delay is analyzed by considering the six factors set out in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"). When evaluating "whether the agency's delay is so egregious as to warrant mandamus," the Court must consider the following:

> (1) the time agencies take to make decisions must be governed by a rule of reason;

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

> (3) delays that might be reasonably in the sphere of economic regulation are less tolerable when health and welfare are at stake;

> (4) the effect of expediting delayed action on agency activities of higher or competing priority;

> (5) the nature and extent of the interest prejudiced by delay; and

> (6) that it need not find any impropriety behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotations omitted). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *Core Commc'ns*, 531 F.3d at 855, quoting *TRAC*, 750 F.2d at 80. "Each case must be analyzed according to its own unique circumstances" and "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).

## A. *TRAC* Factors 1 and 2

The first two factors weigh in defendants' favor. Typically considered together, *see Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020), these factors ask whether the delay comports with a "rule of reason," which can be determined by a congressionally provided

"timetable or other indication of the speed with which it expects the agency to proceed." *TRAC*, 750 F.2d at 80.

Defendants point out that "there is no statutory or regulatory timeframe within which the [DOS] or a consular officer must reconsider the refused visa application," and that "Congress gave the [DOS] 'wide discretion in the areas of immigration processing.'" Reply at 2, citing *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Plaintiff takes the position, though, that the absence of a statutory provision weighs in his favor: "there is no Congressional guidance that supplies a rule of reason that would justify Defendants' delay in this case." Opp. at 8. When there is no "congressionally supplied yardstick" for a reasonable timetable, courts in this district "typically turn to case law as a guide." *Milligan*, 502 F. Supp. 3d at 318, quoting *Sarlak v. Pompeo*, No. 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). And as the court in *Sarlak* noted, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." 2020 WL 3082018, at *6 (internal citation omitted).

Approximately forty-two months have passed since plaintiff's parents' visa applications were filed. *See* Howard Decl. ¶¶ 6–7. The Court does not mean to minimize the burdens imposed by that delay; it is entirely understandable that the family would find three years to be too long. But similar and even greater delays have been found insufficient to warrant emergency relief in this district. *See Skalka,* 246 F. Supp. 3d at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention" and citing cases finding delays up to ten years as reasonable); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (two-year delay); *Zandieh v. Pompeo*, No. 20-919, 2020 WL 4346915, at *6 (D.D.C.

July 29, 2020) (twenty-nine month delay); *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-00397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (twenty-five month delay).

Moreover, defendants assert that routine visa services were and remain suspended in Bangladesh due to the international COVID-19 pandemic.  Mot. at 2–3; Reply at 3.  The significant public health considerations impacting consular staff and the suspension of visa activities in Bangladesh are circumstances well beyond the agency's control, and they weigh in favor of defendants on the first two *TRAC* factors.

For these reasons, the Court finds that the first and second *TRAC* factors weigh in favor of defendants.

**B.  *TRAC* Factors 3 and 5**

The third and fifth *TRAC* factors weigh in plaintiff's favor.[7]  The third factor considers whether "health and welfare are at stake," and the fifth considers "the nature and extent of the interests prejudiced by delay."  *TRAC*, 750 F.2d at 80.  Because the third and fifth factors are similar, courts tend to analyze them together.  *See, e.g.*, *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991) ("*Bar Lab'ys*").  Plaintiff alleges that the delay in adjudicating his parents' visas has "irrevocably harmed [p]laintiff by causing a loss of consortium between [p]laintiff and [p]laintiff's family members, among other ways."  Compl. ¶ 59.  It is plainly difficult for plaintiff to be separated from his parents, and his interest in receiving a decision is significant.  But given the bond between these family members, the Court has reason to believe that the strain imposed on the relationship has not caused "irrevocable" harm, and it is notable for purposes of the amount

---

7    Plaintiff and defendants both considered the third and fifth *TRAC* factors together in their pleadings.  Mot. at 10–11; Opp. at 9–10.

of weight to be accorded this factor that fortunately, there are no allegations of exigent health concerns.

In sum, these factors weigh in plaintiff's favor, but they do not outweigh the other factors.

## C.  *TRAC* Factor 4

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, is of critical importance in this case and supports defendants' motion.   This factor carries "the greatest weight in many cases," *Milligan*, F. Supp. 3d at 319, and courts generally defer to the agency's "unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Barr Lab'ys*, 930 F.2d at 76.  The D.C. Circuit has declined mandamus relief "even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *see also Burwell*, 812 F.3d at 192 (courts should "reject[] mandamus claims that would have [] the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants.").

The relief sought by plaintiff would place him ahead of others awaiting similar decisions. Defendants explain that "[t]he COVID-related shutdowns . . . have resulted in an accrual of a significant backlog of visa applications worldwide, such as the visa applications at issue in this case," and that "[t]he Embassy in Dhaka is currently working through that backlog."  Howard Decl. ¶ 13.  Since granting the relief plaintiff seeks would move his parents' applications ahead of other individuals in similarly difficult circumstances, the Court finds that this factor weighs in favor of defendants.

13

### D. *TRAC* Factor 6

The sixth factor reminds the Court that it "need not 'find any impropriety [] behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Plaintiff has not asserted bad faith on the part of defendants, Opp. at 10, and the Court would therefore be inclined to consider this factor to be neutral.  However, the Court notes that other courts in the district have concluded that the absence of such allegations weighs in favor of the agency because "the good faith of the agency in addressing the delay weighs against relief." *Tate v. Pompeo*, No. 20-3249, 2021 WL 148394, at *12 (D.D.C. Jan. 16, 2021), quoting *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005).

It is not necessary to resolve that issue here since the sixth factor would not weigh heavily in the analysis in either event, and the Court finds that the assessment of all of the other factors strongly favors the defendants.

### III.   Due Process Claim

Plaintiff's second claim for relief alleges that defendants have violated his due process rights under the Fifth Amendment through "[t]he combined delay and failure to act by [d]efendants." Compl. ¶ 58.  Defendants move to dismiss this claim under Rule 12(b)(6).

The Court recognizes that "[i]n the enforcement of the [immigration] policies, the Executive Branch of the Government must respect the procedural safeguards of due process." *Galvan v. Press*, 347 U.S. 522, 531 (1954).  To state a due process claim, plaintiff must plausibly allege, first, that "there exists a liberty or property interest of which plaintiff has been deprived," and second, that the procedures the government provided were constitutionally inadequate. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *see also Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 47 (D.D.C. 2018).

Plaintiff has not provided the Court with any legal support for the notion that his interest in his association with his parents and their immigration to the United States is a liberty or property interest cognizable under the due process clause.  While there is authority for the proposition that parents have a fundamental constitutional liberty interest in the "care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31 (1981) (addressing due process requirements in parental termination proceedings); *Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 854–56 (1977) (examining constitutional adequacy of notice, pre-removal conference, and post-removal hearing in administrative action to remove child from custody of foster parents); *Stanley v. Illinois*, 405 U.S. 645, 649 (1972) (due process entitles unwed father to a hearing on his fitness as a parent before removing minor children from his custody), here, plaintiff is an adult, and he does not allege that the government has taken any action aimed directly at disrupting the familial relationship.

Moreover, the parent-child relationship is usually recognized as a liberty interest in the context of a parent's right to the custody and care of a minor child.  *See Ginsberg v. New York*, 390 U.S. 629, 639 (1968) (recognizing parents' right "to direct the rearing of their children [as] basic in the structure of our society"); *Stanley*, 405 U.S. at 651 (internal quotation marks omitted) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").  The D.C. Circuit does not recognize a relationship protected under the due process clause where the child is an independent adult.  *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) (dismissing a mother's section 1983 claim that her son's death during his employment with the D.C. Metropolitan Police Department violated her due process right to the companionship of her adult child because "a parent does not have a constitutionally-

protected liberty interest in the companionship of a child who is past minority and independent");
*see also McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (dismissing section 1983 claim against police officers implicated in the fatal shooting of plaintiff's son on the ground that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child").

Thus, the Court is bound by circuit precedent to find that plaintiffs' claim does not implicate a liberty interest protected by the Fifth Amendment. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 26 (D.D.C. 2010) (plaintiff had no constitutionally protected interest in maintaining a relationship with his adult child); *see also Singh v. Tillerson*, 271 F. Supp. 3d 64, 71 –72 (D.D.C. 2017) (finding that the limited exception to consular nonreviewability for visa decisions that violate a constitutionally protected liberty interest did not apply because plaintiffs did not have a liberty interest in the parent-child relationship), citing *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States.").

Therefore, the Court will dismiss plaintiff's constitutional claim.

## CONCLUSION

For these reasons, defendants' motion to dismiss, [Dkt. # 14], will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 16, 2021

16